UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICAH B.,[1] | : | Case No. 3:25-cv-00078 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**REPORT AND RECOMMENDATIONS[2]**

Plaintiff Micah B. brings this case challenging the Social Security Administration's denial of his applications for Child Disability Benefits (CDB) and Disability Insurance Benefits (DIB). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #15), Plaintiff's Reply (Doc. #16), and the administrative record. (Doc. #8).

**I.    Background**

The Social Security Administration provides CDB and DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

"substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for CDB in April 2021 and DIB in September 2023, alleging disability beginning October 31, 2009, due to autism. (Doc. #8-6, *PageID* #382). At that time, he had not yet attained the age of twenty-two years old.[3] After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a telephone hearing before Administrative Law Judge (ALJ) Nicholas J. Schwalbach on February 20, 2024. (Doc. #8-2, *PageID* #s 81-115). Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Born [in] 1989, Plaintiff had not attained age 22 as of October 31, 2009, the alleged onset date. |
| | | Plaintiff has not engaged in substantial gainful activity since October 31, 2009, the alleged onset date. |
| Step 2: | | Prior to attaining age 22, and through the date of the decision, Plaintiff has the following severe impairment: autism spectrum disorder. |
| Step 3: | | Prior to attaining age 22, and through the date of the decision, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | His residual functional capacity ("RFC"), or the most he can do, despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), prior to attaining age 22, and through the date of this decision, consists of the ability "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions and perform routine tasks; use |

---

[3] Social Security regulations provide for the payment of disabled child's insurance benefits if the claimant is eighteen years old or older and has a disability that began before attaining age twenty-two. 20 C.F.R. § 404.350(a)(5).

|  |  |
|---|---|
|  | judgment to make simple work-related decisions; can perform goal-oriented work (e.g., office cleaner) but is unable to perform at a production-rate pace (e.g., assembly line work); he can have occasional contact with coworkers, supervisors, and the public; he can tolerate occasional changes in an otherwise routine work setting explained in advance to allow time for adjustment to new expectations." |
|  | He has no past relevant work. |
| Step 5: | Prior to attaining age 22, and through the date of this decision, considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. |

(Doc. #8-2, *PageID* #s 64-73). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, at any time prior to November 29, 2011, the date he attained age 22, or through the date of this decision. *Id.* at 73.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 62-73), Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #15), and Plaintiff's Reply (Doc. #16). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing

*Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. <u>Discussion</u>

Plaintiff argues that the ALJ's assessment of the severity of Plaintiff's mental impairments is not supported by substantial evidence as the ALJ failed to adequately articulate his reasoning for finding a mild degree of impairment in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace by relying solely on the results of two sets of IQ test scores. (Doc. #11, *PageID* #s 845-47). Further, the ALJ erred in failing to address the special conditions associated with his work activity, particularly since the evidence of record suggested he had significant difficulty obtaining work by interviewing for positions on his own and that it took him twice as long to earn his associate's degree. *Id.* Finally, Plaintiff asserts that the ALJ reversibly erred in evaluating his symptom severity. *Id.* at 847-49.

The Commissioner counters that substantial evidence supports the ALJ's RFC determination and that the ALJ properly evaluated Plaintiff's subjective complaints in accordance with the appropriate regulations. (Doc. #15, *PageID* #s 862-69).

### A. Evaluation of Plaintiff's Mental Impairments

At Step Three of the five sequential steps set forth in the Social Security Regulations, the ALJ determines whether a plaintiff has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520. As part of the analysis, the ALJ considers whether the "paragraph B" criteria are satisfied. For the criteria to be satisfied, the ALJ must find either two marked[4] limitations or one extreme[5] limitation in the four areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. If the ALJ does not find a plaintiff to be either marked in two areas of functioning or extreme in one area of functioning, the analysis proceeds to Step Four.

> However, this Court has held that there is no requirement that the ALJ provide any specific level of articulation about the step three analysis. *See Bledsoe v. Barnhart,* 165 Fed.Appx. 408, 411 (6th Cir. 2006) (noting that the "argument that the ALJ should spell out the weight he gave to each factor in his step three analysis is not supported by case law"); *Lee v. Comm'r of Social Security,* 2013 WL 6116814, *7 (N.D. Ohio Nov.20, 2013) ("The court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis"). Further, at step three, [Plaintiff] has the burden of showing that he or she has an impairment of Listing severity; "[t]he burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with [Plaintiff]." *Miller v. Comm'r of*

---

[4] A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, on a sustained basis. (Doc. #8-2, *PageID* #65).

[5] An extreme limitation is the inability to function independently, appropriately, or effectively. (Doc. #8-2, *PageID* #65).

5

*Social Security,* 848 F.Supp.2d 694, 708 (E.D.Mich.2011), *citing Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001).

*McKee ex rel. McKee v. Comm'r of Soc. Sec.*, No. 2:14-CV-609, 2015 WL 1299562, at *4 (S.D. Ohio Mar. 23, 2025), (Kemp, M.J.), *report and recommendation adopted sub nom. McKee v. Colvin*, No. 2:14-CV-609, 2015 WL 1637470 (S.D. Ohio Apr. 13, 2015) (Graham, D.J.).

In this case, the ALJ found Plaintiff to have a mild limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing for oneself. (Doc. #8-2, *PageID* #s 65-66). Plaintiff argues that substantial evidence does not support the ALJ's assessment of his mental impairments because the ALJ did not explain how the two IQ tests he relied on resulted in mild limitations, did not consider Plaintiff performed work under special conditions, and did not factor into his analysis that it took Plaintiff four years to earn an associate's degree instead of two years. (Doc. #11, *PageID* #s 845-47).

For the following reasons, the undersigned finds Plaintiff's argument unpersuasive. First, the Sixth Circuit has held that there is no minimum articulation requirement for an ALJ's step three analysis. *Bledsoe,* 165 Fed.Appx. at 411. Considering Plaintiff's ability to understand, remember, or apply information, the ALJ found that "[Plaintiff's] mental status exams have shown no deficits in his memory or fund of knowledge," citing Plaintiff's Working Memory and Verbal Comprehension scores in both 2013 and 2021. (Doc. #6-2, *PageID* #65) (citing Doc. #8-11, *PageID* #823; Doc. #8-8, *PageID* #s 670-71). In the 2013 mental status exam, Fred M. Sacks, Ph. D., found Plaintiff to be in "the average range of intelligence" with his Working Memory score of 97 and Verbal Comprehension score of 85. (Doc. #8-11, *PageID* #823). In the 2021 mental status

6

exam, Christopher C. Ward, Ph.D., found Plaintiff to be in "the low average range of intelligence" with his Working Memory score of 89 and Verbal Comprehension score of 78. (Doc. #8-8, *PageID* #s 670-71). Although Plaintiff identifies that the ALJ gave an incorrect 2021 Verbal Comprehension score of 89 in the ALJ's analysis of Plaintiff's ability to understand, remember, or apply information, the ALJ gave the correct score of 78 elsewhere in his decision and accurately citied Dr. Ward's finding that Plaintiff was in "the low average range of intelligence." (Doc. #8-2, *PageID* #s 66, 69, 71); *see Lee*, 2013 WL 6116814, *7 ("The court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis"). Plaintiff has not pointed to any evidence or medical opinion that would indicate that he should receive a greater functional limitation than the mild limitation that the ALJ found in the area of understanding, remembering, or applying information.

Similarly, considering Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ found that Plaintiff's 2013 and 2021 mental status exams reflected a mild limitation, citing Plaintiff's full scale IQ of 90, Perceptual Reasoning score of 98, Working Memory score of 97, Processing Speed score of 89, and Verbal Comprehension score of 85 in 2013; Plaintiff's Full Scale Intelligence Quotient of 82, Perceptual Reasoning score of 92, Working Memory score of 89, Processing Speed score of 86, and Verbal Comprehension score of 78 in 2021. (Doc. #6-2, *PageID* #66) (citing Doc. #8-11, *PageID* #823; Doc. #8-8, *PageID* #s 670-71). While the ALJ acknowledged Dr. Sacks' 2013 finding that Plaintiff had limitations in quantitative reasoning and slow processing speed and recommended cognitive training, he recognized that Dr. Sacks had also advised Plaintiff to consider "alternative career goals" to video-game programming as these

7

limitations "may limit [Plaintiff's] opportunities to achieve success in his *preferred* career interests." *Id*. at 66; citing Doc. #8-13, *PageID* #827 (emphasis added). Dr. Sacks in 2013 found Plaintiff to be in the "average range of intelligence" despite these identified limitations, while Dr. Ward in 2021 found Plaintiff to be in the "low average range of intelligence." (Doc. #8-11, *PageID* #823; Doc. #8-8, *PageID* #s 670-71). Additionally, Plaintiff testified at the hearing that he had no issues maintaining attention, concentration, or finishing what he started. (Doc. #8-2, *PageID* #96). Once again, Plaintiff has not pointed to any evidence or medical opinion that would support a greater limitation than mild in Plaintiff's ability to concentrate, persist, or maintain pace.

Second, the undersigned finds Plaintiff's argument that the ALJ erred in failing to consider Plaintiff performed work under special conditions in his analysis of the paragraph B criteria similarly unavailing. As Plaintiff admits in his Statement of Errors, the ALJ recognized that Plaintiff had worked under special conditions when assessing whether any of that work rose to substantial gainful activity, citing Plaintiff's employers' Work Activity Questionnaires. (Doc. #11, *PageID* #s 845-46); (Doc. #8-2, *PageID* #65) (citing Doc. #8-7, *PageID* #s 585-88); *see Lee*, 2013 WL 6116814, *7. Additionally, Plaintiff testified that he would be able to work a cleaning position full-time, as well as perform his filing and scanning work at the Darke County Office of Auditor full-time. (Doc. #8-2, *PageID* #s 98-99). When the ALJ asked Plaintiff's mother if she believed that Plaintiff could do that work at a full-time capacity, she answered that he probably could. *Id*. at 108. While not discussed in his paragraph B criteria analysis, The ALJ noted both Plaintiff's and his mother's testimony later in his decision, as well as Plaintiff's mother's concerns that Plaintiff's past employers were family friends. *Id*. at 67-68. Looking at the ALJ's decision as a

whole, it is clear that the ALJ did not improperly ignore evidence of Plaintiff's work under special conditions; rather, the ALJ accepted Plaintiff's and his mother's statements that he was capable of full-time work in either a cleaning or scanning and filing capacity.

Finally, the undersigned finds Plaintiff's argument that the ALJ erred in failing to specifically consider in his paragraph B criteria analysis that it took Plaintiff four years to earn an associate's degree instead of two years unpersuasive. While Plaintiff contends that the extended length of time to earn the degree, his hundreds of unsuccessful job interviews in the IT field, and his video game design skills were all factors that the ALJ should have considered in his paragraph B criteria analysis, Plaintiff has not explained how those factors would have produced a greater level of limitation in any of the four areas of functioning. (Doc. #11, *PageID* #s 846-47). Additionally, in answer to the ALJ's question if Plaintiff was still pursuing IT jobs, Plaintiff testified, "I'm no longer doing that. It's all just for fun." (Doc. #8-2, *PageID* #99).

Furthermore, when considering Plaintiff's ability to perform work in the national economy, the ALJ "will determine that [a plaintiff] is not disabled if [a plaintiff's] residual functional capacity and vocational abilities make it possible for [a plaintiff] to do work which exists in the national economy, but [a plaintiff] remain unemployed because of [a plaintiff's] inability to get work … the hiring practices of employers … or [a plaintiff] do[es] not wish to do a particular type of work." 20 C.F.R. 404.1566(c)(1, 3, 8). While Plaintiff had hundreds of unsuccessful job interviews in the IT field, Plaintiff was working part-time at both Taco Bell and the Darke County Office of the Auditor at the time of the hearing. (Doc. #8-2, *PageID* #s 89-90). Plaintiff testified that he believed that he had not been hired for IT positions because employers "seem to be fearing

that [his] diagnosis will be slowing them down business-wise." *Id*. at 95. Finally, Plaintiff expressed that he believed he could work full-time either in a cleaning or scanning and filing position. *Id*. at 98-99. Thus, whether the Plaintiff could obtain and maintain employment in the IT field is irrelevant to the ALJ's analysis of whether Plaintiff could perform work in *any* job that exists in significant numbers in the national economy, let alone Plaintiff's limitations in functioning as analyzed in the paragraph B criteria.

For the forgoing reasons, the undersigned finds that substantial evidence supports the ALJ's analysis of Plaintiff's mental impairments, specifically the paragraph B criteria.

    **B**.    **Evaluation of Plaintiff's Symptom Severity**

When a plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, *2-3 (October 25, 2017).[6] First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any

---

[6] SSR 16-3p, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247; *see also Millsap v. Comm'r of Soc. Sec.*, No. 3:19-cv-197, 2020 WL 6275948, at *3 (S.D. Ohio May 27, 2020) (Ovington, M.J.), *report and recommendation adopted*, No. 3:19-cv-197, 2020 WL 6273402 (S.D. Ohio Oct. 26, 2020) (Rice, D.J.). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole. *Rogers*, 486 F.3d at 247; *see also Huguely v. Comm'r of Soc. Sec.*, No. 3:08-cv-113, 2009 WL 816600, at *4 (S.D. Ohio Mar. 25, 2009) (Merz, M.J.), *report and recommendation adopted*, No. 3:08-cv-113, 2009 WL 816600 (S.D. Ohio Mar. 25, 2009) (Rice, D.J.). Therefore, "absent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

In this case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably expected to cause his alleged symptoms but found his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence in the record. (Doc. #8-2, *PageID* #68). The ALJ discussed Plaintiff's testimony of working part-time at both Taco Bell and Darke County Office

11

of Auditor. *Id*. at 67. Additionally, the ALJ noted that Plaintiff testified that he could work full-time at the Darke County Office of Auditor if full-time work were available. *Id*. Furthermore, the ALJ described how Plaintiff testified that, while people mistreating others or having an attitude bothers him, he has no problems getting along with his coworkers and supervisors, spends time with his mother and father, and has no problem interacting with others (when they are not mistreating others or having an attitude). *Id*. Finally, the ALJ noted that Plaintiff testified that he was not receiving any treatment for his autism spectrum disorder. *Id*.

Plaintiff argues that, beyond the boilerplate language of not finding Plaintiff's statements consistent with the medical evidence and other evidence in the record, the ALJ did not conduct a symptom severity analysis. (Doc. #11, *PageID* #s 848-49). Specifically, Plaintiff contends that the ALJ "failed to provide any further explanation as to the weight given to [Plaintiff's] symptoms[,] failed to mention any of the factors set forth in SSR 16-3p and 20 C.F.R. § 404.1529(c)(3)[,] and further failed to apply those factors to the evidence." *Id.* at 848-49. Plaintiff argues that this failure "to articulate his reasons for the weight of [Plaintiff's] symptoms makes it impossible for "subsequent reviewers" "to assess how [the ALJ] evaluated [Plaintiff's] symptoms." *Id*. at 848.

For the following reasons, the undersigned does not find Plaintiff's argument persuasive. While Plaintiff is correct that the ALJ does not specifically mention the SSR 16-3p and 20 C.F.R. § 404.1529(c)(3) factors, a review of his decision demonstrates that he did consider the factors that were relevant to Plaintiff's case. The ALJ clearly considered Plaintiff's daily activities when noting Plaintiff's testimony and a September 2021 assessment that reported that Plaintiff "work[ed] part-time at Taco Bell[,] … participated in many community events, enjoyed going to

dances, like[d] to go shopping, out to eat, and spen[t] time with others outside of his home." (Doc. #8-2, *PageID* #70) (citing Doc. #8-8, *PageID* #675). Additionally, the ALJ described how Plaintiff "reported living on his own, having his own car and driver's license, and having his own YouTube channel." *Id*. (citing Doc. #8-8, *PageID* #676). Furthermore, the ALJ considered how Plaintiff asserted, both at the hearing and a 2021 consultive psychological exam, that he did not receive mental health treatment or medication for his autism spectrum disorder. *Id*. at 68-69, citing *id*. at 99; (Doc. #8-8, *PageID* #669). Additionally, the ALJ accounted for Plaintiff's testimony that he had challenges with interacting with people who mistreated others or had bad attitudes by limiting him to occasional interaction with coworkers, supervisors, and the public, despite Dr. Ward finding that Plaintiff "had no limitations interacting with others in the work setting." *Id*. at 70, citing *id*. at 92; (Doc. #8-8, *PageID* #672). Furthermore, the ALJ accounted for Plaintiff's subjective testimony that he could work full-time in a cleaning position by determining "commercial cleaner," "floor waxer," and "kitchen helper" as jobs that Plaintiff could perform in the national economy. *Id*. at 72 citing *id*. at 98-99. Additionally, to the extent that Plaintiff contends that the ALJ did not account for every one of her subjective complaints, an ALJ is not required to discuss "every piece of evidence in the record for his decision to stand," if the ALJ considered the evidence. *Thacker v. Comm'r of Soc. Sec.,* 99 F. App'x 661, 665 (6th Cir. 2004).[7]

Plaintiff has not pointed to any medical evidence or other evidence that finds Plaintiff more limited in functioning than found in the ALJ's symptom severity analysis. The ALJ's reliance on

---

[7] While *Thacker* concerned SSR 96-7p, not its superseding SSR 16-3p, the case law remains fully applicable to SSR 16-3p determinations. *See Prichard v. Comm'r of Soc. Sec.*, No. 1:19-CV-573, 2020 WL 5544412, at *6 (S.D. Ohio Sept. 16, 2020) (Bowman, M.J.).

Plaintiff's daily activities, Plaintiff's lack of medication or mental health treatment, and Plaintiff's own testimony demonstrates that the ALJ considered the entire record in assessing Plaintiff's symptom severity.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. #11) be **DENIED**;

2. The Commissioner's non-disability finding be **AFFIRMED**; and

3. The case be terminated on the Court's docket.

January 28, 2026

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).